**NORTON MANUFACTURING CORPO-
RATION, a Corporation, Plaintiff-
Appellee,**

v.

**UNITED STATES of America,
Defendant-Appellant.**

**No. 17191.**

United States Court of Appeals
Seventh Circuit.

April 18, 1969.

Mitchell Rogovin, Dept. of Justice, Stanley L. Ruby, Atty., Tax Division, Lee A. Jackson, Chief, Appellate Section, Elmer J. Kelsey, Atty., Dept. of Justice, Washington, D. C., Eugene Robinson, Asst. U. S. Atty., Thomas A. Foran, U. S. Atty., Chicago, Ill., for defendant-appellant.

Walter P. Murphy, Walter Wm. Pearson, Murphy & Pearson, Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD and KERNER, Circuit Judges, and GORDON, District Judge.[1]

KERNER, Circuit Judge.

Norton Manufacturing Corporation filed an action in the district court against the United States seeking a refund of excise taxes assessed and paid pursuant to Sec. 4161 of the Internal Revenue Code of 1954. The court heard the matter on affidavits and cross-motions for summary judgment and entered Norton's motion for summary judgment against the United States in the sum of $50,422.51 with interest at 6%. The United States appeals from the judgment order.

The only issue before this court is whether the district court properly found that the fishing pole sold by Norton is not a "fishing rod" under Sec. 4161 and therefore not taxable.

Norton for approximately twenty years has imported bamboo cane of various lengths. After cleaning, straightening and varnishing, the canes are cut into two or three sections depending upon their lengths. The cut sections are fitted with metal ferrules for the purpose of joining the sections together and a small wire loop is fitted to the tip of the top piece to which a fishing line may be fastened. The purpose of the cutting and the addition of the ferrules is to make the pole conveniently portable.

1. Judge Gordon is sitting by designation from the United States District Court for the Eastern District of Wisconsin.

Section 4161, Title 26 U.S.C. provides:

Sec. 4161. Imposition of Tax.

There is hereby imposed upon the sale by the manufacturer, producer, or importer of the following articles (including in each case parts or accessories of such articles sold on or in connection therewith, or with the sale thereof) a tax equivalent to 10 percent of the price for which so sold:

Badminton nets, rackets and racket frames (measuring 22 inches overall or more in length), racket string, shuttlecocks, and standards.

Billiard and pool tables (measuring 45 inches overall or more in length) and balls and cues for such tables.

Bowling balls and pins.

Clay pigeons and traps for throwing clay pigeons.

Cricket balls and bats.

Croquet balls and mallets.

Curling stones.

Deck tennis rings, nets and posts.

Fishing rods, creels, reels and artificial lures, baits and flies.

Golf bags (measuring 26 inches or more in length), balls and clubs (measuring 30 inches or more in length).

Lacrosse balls and sticks.

Polo balls and mallets.

Skis, ski poles, snowshoes, and snow toboggans and sleds (measuring more than 60 inches overall in length).

Squash balls, rackets and racket frames (measuring 22 inches overall or more in length), and racket string.

Table tennis tables, balls, nets and paddles.

Tennis balls, nets, rackets and racket frames (measuring 22 inches overall or more in length) and racket string.

■ The history of the act is not helpful in our determination. However, § 4161 does make exceptions as to items listed dependent upon size or length, and, therefore, we must conclude that the taxing section is not all inclusive but is specific in its terminology. An item not included by its normally accepted usage is excluded and not taxable.

Poles and rods have specific and separate meanings among fishermen. A fishing pole is generally a natural product such as cane bamboo and may be in one piece or two or more pieces joined together by ferrules. A pole has no handle or reel seat and since no reel is used, no line guides are necessary. Poles are limited to still fishing and the area to be fished is limited to the length of the line and the pole.

Rods, on the other hand, are scientifically and specifically designed for various uses such as trolling, bait casting, fly-casting, spin-casting and spinning. Rods are manufactured from metals, glass, plastics and bamboo. The bamboo rod requires a processing which changes it from its natural form. The bamboo cane is split into lengthwise pieces, heat-tempered, glued together in precise sections and usually impregnated with resins. All fishing rods are fitted with handles, reel seats, reels, line guides and in some cases with ferrules.

The Commissioner of Internal Revenue issued a Revenue Ruling relating to the manufacture of fishing poles.

Section 316.4 of Regulation 46, made applicable to the 1954 Code by Treasury Decision 6091, C.B. 1954–2, 47, states that the term "manufacturer" includes a person who produces a taxable article from scrap, salvage, or junk material as well as from new or raw material, (1) by processing, manipulating, or changing the form of the article, or (2) by combining or assembling two or more articles.

A pole constitutes a fishing rod as contemplated by section 4161 of the Code where it is designed by the manufacturer for fishing purposes and is suitable for such purposes. In this respect, no distinction is made between the terms "pole" and "rod". Cane poles whether in their natural state or straightened, scraped, and

**904**

varnished are not regarded as being either manufactured or designed for fishing purposes. However, where cane poles are cut into sections and fitted with ferrules or other means whereby they may be joined together, they are considered to be manufactured and designed for fishing purposes. Revenue Ruling 58–425, 1958–2, Cum.Bull., 804.

Two circuits have differed in the application of the Regulation and the Ruling issued thereunder and have reached opposite conclusions in identical factual situations. Commerce-Pacific, Inc. v. United States, 278 F.2d 651 (9th Cir. 1960), and Simmons v. United States, 308 F.2d 938 (5th Cir. 1962). Both of these cases, as in *Norton,* were actions seeking a refund for taxes paid. The processing of bamboo cane poles into ferruled poles was identical with one exception. In *Commerce,* additional string windings were added to strengthen the pole. The Court of Appeals in *Commerce* affirmed the district court's holding that the ferruled poles are "fishing rods" within the meaning of § 4161 of the Internal Revenue Code of 1954.

In *Simmons* the court, in reversing and remanding the case to the district court because the judge decided the question as a matter of law, established a "logical test to be applied in determining what Congress was doing. It [Congress] was levying an excise tax upon the sale of articles manufactured by processes simple or complex so that something usable would be produced where it did not exist in the form which nature had furnished." 308 F.2d at 944.

█ Adopting the test in *Simmons* we conclude that Congress did not intend to include "poles" as compared to "rods" within the meaning of the section. We agree with the court in *Simmons* that "[P]laintiff's poles were not rods within the meaning of the statute. When the manufacturer's art was applied to the bamboo pole, it had absolutely no greater utility for fishing than it had as nature had fashioned it. The angler had no better fishing pole after

the original pole had been cut in pieces and reassembled than he had before the cutting process was begun." 308 F.2d at 944. The judgment of the district court is affirmed.

Affirmed.