**NORDBY SUPPLY COMPANY,**
**Appellee,**

v.

**UNITED STATES of America,**
**Appellant.**

**No. 77–2059.**

United States Court of Appeals, Ninth Circuit.

April 10, 1978.

Before BROWNING, GOODWIN, and KENNEDY, Circuit Judges.

PER CURIAM:

The United States appeals from a judgment in favor of the Nordby Supply Co. (Nordby), finding Nordby entitled to a refund of $2,714.25 for taxes paid. We reverse and remand.

Nordby imported and sold fishing lures under the trade name "Husky". The lures were packaged without hooks in groups of ten. Each package was marked "Designed and Sold for Commercial Fishing Only". In all other respects, the lures were identical to lures used in recreational fishing. Commercial fishermen purchased 80% of these lures.

Nordby paid the excise tax imposed on importers and manufacturers of fishing lures under Int.Rev.Code § 4161(a), and sued for a refund. The district court held that the tax applied to sport fishing equip-

ment only, and not to commercial fishing equipment, and awarded Nordby a refund of 80% of the tax paid.

The language of § 4161(a) does not distinguish between sport fishing and commercial fishing. But the district court cited three reasons for distinguishing the two kinds of fishermen for tax purposes. First, the court pointed out that § 4161(a) is in a subchapter of the Code labeled "recreational equipment" and a part entitled "sporting goods". Second, the court believed that Congress did not intend to tax lures used in commercial fishing. And, finally, the court asserted that the Commissioner's own Regulations, 26 C.F.R. § 48.4161(a)–1, supported the nontaxation of commercial fishing equipment.

The Internal Revenue Code itself provides that nothing is to be inferred from the grouping or indexing of any particular section, 26 U.S.C. § 7806(b), and this court has held that the title of a statute cannot limit the plain meaning of its text. *Pike v. United States*, 340 F.2d 487 (9th Cir. 1965). Therefore, the fact that § 4161(a) is located in that part of the Code dealing with "recreational equipment" and "sporting goods" is of little significance.

Unlike the district court, we do not find the legislative history unambiguous. This excise tax was originally enacted in 1917 to raise revenue for World War I. 40 Stat. 300. At that time a large number of sporting goods were taxed, including croquet balls, badminton racquets, and billiard cues. In 1965, as part of the Excise Tax Reduction Act, 79 Stat. 136, Congress repealed the tax on all of these goods except for fishing equipment. The committee report states that "[t]he 10 percent manufacturers' excise tax on fishing equipment is continued because revenues equivalent to the tax on these items are distributed under the provisions of Public Law 681, 81st Congress, to

aid the States in fish restoration, and management in respect of fish having a material value for sport and recreation." 1965 U.S.Code Cong. & Admin.News p. 1672. While the revenues raised by the tax are clearly intended to benefit recreational fishermen, there is no reason to believe that commercial fishermen do not also benefit from conservation programs, nor to believe that Congress intended to exempt commercial fishermen from sharing the cost of these programs. The legislative history does suggest that Congress originally intended to tax sporting equipment, but the history of the partial repeal proves nothing about a preference for commercial over sport fishermen.

The district court's theory that the Regulations support such an interpretation is based on a misunderstanding. The Regulation, § 48.4161(a)–1, does speak consistently in terms of the sport of fishing. The particular sentence quoted by the district court, however, is taken out of context.[1] The Regulation is exempting from tax those articles which are nominally fishing gear, but are actually toys or novelties and not suitable for actual fishing use.

There is no dispute that the lures here can be used, and are in fact sometimes used, for sport fishing. They are therefore sporting goods. The fact that the ultimate consumer may use the lures for commercial purposes does not change their character as sporting goods. *Cf. Commerce-Pacific, Inc. v. United States*, 278 F.2d 651, 653 (9th Cir.), *cert. denied*, 364 U.S. 872, 81 S.Ct. 115, 5 L.Ed.2d 94 (1960). The tax is imposed on the manufacturer or importer. In most cases the manufacturer will not know, when the tax is imposed, whether the ultimate consumer will use the goods for commercial or recreational purposes, or both. To hold that the imposition of the tax on the manufacturer depends on the character

---

1. The last two sentences of § 48.4161(a)–1(a) read as follows:

"* * * Furthermore, the tax applies only to those specified articles of fishing equipment that are designed or constructed for use in the sport of fishing. Accordingly, the tax does not apply to those articles which, although nominally articles that are

specified in section 4161(a), are in the nature of toys or novelties that merely simulate articles of a type referred to in section 4161(a), and are not designed or constructed for practical use in the sport of fishing."

The district court quoted only the first sentence.

of the use by the ultimate consumer would cause great and unnecessary difficulties in tax collection. We decline to create these difficulties and we do not think that Congress intended to do so.

Reversed and remanded.